Filed 11/15/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LUCIO VILLEGAS,<br><br>     Defendant and Appellant. | A164370<br><br>(Napa County Super. Ct.<br> No. 19CR001442) |


Defendant Lucio Villegas appeals from a sentence of 202 years to life, imposed after a jury found him guilty of six counts of lewd and lascivious acts on children under 14 (his tenants' daughters, Jane Does One and Two), three sexual offenses involving his own daughter (Jane Doe Three), and one count of dissuading a witness from reporting a crime. On appeal, Villegas asserts that defense counsel was ineffective for failing to seek exclusion of a portion of his second custodial interrogation based on violations of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Villegas also contends that his sentences of 25 years to life for the three counts involving Jane Doe Three must be reduced to 15 years to life on due process grounds, as the prosecution failed to plead properly the statutory provisions allowing for the greater punishment. Next, Villegas argues that the trial court erred in awarding noneconomic damages to Jane Doe Three and the two mothers of the three

1

victims.  Finally, he maintains that the $4,800 sex offender fine imposed pursuant to Penal Code[1] section 290.3 must be reduced to $4,300.

We will reduce Villegas's sentences on counts eight through ten from 25 years to life to 15 years to life and, pursuant to the agreement of the parties, reduce his sex offender fine to $4,300 but impose $12,320 in additional mandatory assessments.  We otherwise affirm.

## I.  BACKGROUND

### A.     *Operative Information and Trial Evidence*

On September 20, 2021, the Napa County District Attorney filed the operative first amended information in this case, charging Villegas with 10 felonies:  six counts of lewd and lascivious acts on a child under 14 (§ 288, subd. (a), counts one through six), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), count seven), forcible rape of a minor over 14 (§ 261, subd. (a)(2), count eight), sexual penetration by a foreign object on a minor over 14 (§ 289, subd. (a)(1)(C), count nine), and forcible oral copulation of a minor over 14 (former § 288a, subd. (c)(2)(C); see now § 287, subd. (c)(2)(C), count ten).  As to counts one through six, enhancements were alleged pursuant to section 667.61 (the One Strike law), subdivision (j)(2) and (e) that the crimes were committed against children under the age of 14 and that Villegas was convicted of qualifying offenses against more than one victim.  As to counts eight through ten, enhancements were alleged pursuant to section 667.61, subdivisions (b) and (e) that the qualifying convictions committed by Villegas involved more than one victim.  As to all counts, it was further alleged pursuant to Penal Code sections 1203.065 and 1203.066, subdivision (a)(7) that upon conviction Villegas was ineligible for probation. The operative information also listed the potential punishment for each crime

---

[1] All undesignated statutory references are to the Penal Code.

and enhancement, including listing 25 years to life for enhancements to counts one through six, and 15 years to life for enhancements to counts eight through ten.

Trial was held before a jury over five days in September 2021. The following was among the evidence adduced at trial:

### 1. Allegations Involving Jane Does One and Two

#### i. Testimony of Jane Doe One

Jane Doe One was 14 years old at the time of the trial. Her sister, Jane Doe Two, was ten years old at the time of the trial. Jane Does One and Two lived with their parents in a garage located on Villegas's property. Villegas, his wife G.V., and their daughters (Jane Doe Three and her sister A.V.) had lived in a separate house on the property. Villegas was Jane Doe One's godfather at her first communion, and she would be alone with him when he would take her to school. Jane Doe One also saw Villegas around the house and yard. Villegas was "around" Jane Does One and Two when their parents were "at the store."

According to Jane Doe One, Villegas would use his hand to touch her body. The first time was when Jane Doe One was 11 years old and her parents were at the store. He touched her on her breasts and vagina over her clothes. When Villegas touched her vaginal area, he moved his hand in a rubbing motion. Villegas told Jane Doe One not to tell her parents, which made her uncomfortable and scared. Villegas touched both her breasts and vagina more than two times. One time, Villegas came into the garage while Jane Doe One's mother was showering and called Jane Doe One's name. When she came out in the yard, he moved his hand on her breast. On another occasion, while she played outside with her sister, Villegas touched Jane Doe One's vaginal area using the same rubbing motion as before.

3

Although Villegas usually touched Jane Doe One over her clothes, she remembered one time (when her sister was probably watching YouTube) that Villegas put his hand under her shirt on top of her bra and moved it around. She wanted Villegas to stop, but she did not tell anyone because she was scared. Jane Doe One disclosed to her parents a few weeks after the last incident of molestation.

### ii. Testimony of L.R.

L.R., the mother of Jane Does One and Two, testified that, at the time of trial, her family had been living in the garage on Villegas's property for six years. Villegas and her husband A.R. had been friends for many years. According to L.R., when Villegas came home from work, he would tell her to have the girls come out and play. In May 2018, L.R. saw Villegas approach Jane Doe One from behind in the backyard and put his hands on her chest and crotch over her clothes. L.R. became very upset and "snatched" Jane Doe One away from him. She told Villegas that if he touched Jane Doe One again she would call the police. Villegas responded that, if she called the police, he would "send [her] to Immigration." Villegas's threat frightened L.R.

About a year later, in May 2019, L.R. became suspicious because Villegas asked her where Jane Doe One was each time he returned from work and wanted the girls to come out and play. She asked the two sisters together whether Villegas had been touching them, and both girls confirmed that he had. L.R. told her husband and an administrator at Jane Doe Two's school and then reported the matter to the police.

### iii. Testimony of Jane Doe Two & Her Forensic Interview

Jane Doe Two was 10 at the time of trial. She generally responded that she did not know or did not remember when questioned by the prosecutor. However, Jane Doe Two did remember speaking to a police officer and,

4

although she shook her head when asked if she remembered telling the officer that Villegas had touched her in ways that made her feel uncomfortable, she subsequently nodded and said "yeah" when asked if she remembered those things happening. She also nodded her head when asked if it was really hard to be there and talk that day.

City of Napa Detective Dustin Dodd was experienced in conducting forensic interviews of alleged victims of child molestation. He forensically interviewed Jane Doe Two, a recording of which was played for the jury. During the interview, Jane Doe Two reported that, between Christmas and her birthday, she was outside with L.R. and Jane Doe One playing with a soccer ball when Villegas tickled her and dragged his hand across her chest over her clothes. It made her feel " '[k]ind of sad.' " Another time when she was playing outside by herself, Villegas tickled her and then touched her vaginal area over her clothes. She felt " 'kind of nervous.' " When asked how she felt about Villegas, Jane Doe Two responded: " 'Um, kind of bad.' "

  *iv. Villegas's First Interrogation*

On May 22, 2019, Detective Dodd and City of Napa Detective Jason Barrera interviewed Villegas at the police station. A recording of the interview was played for the jury. At the outset of the interview, Villegas was advised of his *Miranda* rights in both English and Spanish, confirmed his understanding, agreed to talk with the detectives, and proceeded to speak at length. During a large portion of the interview, Villegas failed to provide any useful information. However, after Detective Dodd informed Villegas that the police had spoken to Jane Does One and Two and L.R. who told them " 'everything,' " Villegas admitted that one time he hugged Jane Doe One and her "boobie did get grabbed." Villegas then admitted to "squeez[ing] a little boob" two times and acknowledged he had made a mistake.

5

### 2. Allegations Regarding Jane Doe Three

#### i. Testimony of Jane Doe Three

Jane Doe Three was 25 years old at the time of the trial. Before living on the same property with Jane Does One and Two, she lived at another residence with Villegas, G.V., and her younger sister. She shared a bedroom and bathroom with her sister. Jane Doe Three testified that Villegas "raped [her]" when she was 14 years old. On the morning of the assault, she got up early and went to the bathroom to get ready for school. Villegas knocked on the door, entered the bathroom, and hugged her from behind which was "normal." However, Villegas started massaging Jane Doe Three's crotch. She felt uncomfortable and tried to move but Villegas persisted. Villegas told Jane Doe Three to " 'wet [her]self.' " He then put his hand down her pants under her underwear and "massag[ed] harder," ultimately penetrating her vagina with his finger. According to Jane Doe Three, it was painful. She cried and attempted to end the assault by falling to the bathroom floor. Jane Doe Three told him to stop multiple times, but he continued what he was doing for what seemed like a long time.

Villegas next picked Jane Doe Three up and placed her on the toilet. He pulled down her pajama pants and underwear and performed oral sex on her by licking her vagina for what seemed to her to be a long time. When Jane Doe Three continued to cry, he told her to shut up. According to Jane Doe Three, Villegas told her "he was showing [her] what one day [she] couldn't let a boy do to" her.

Thereafter, Villegas pulled down his own pants and underwear, crouched over Jane Doe Three on the toilet, and inserted his penis in her vagina, thrusting his hips back and forth. Jane Doe Three felt physically "numb," and just stayed limp on the toilet, thinking there was nowhere she

6

could go. Villegas asked her if she could "feel it," and she said yes. The thrusting seemed to last a long time. Villegas did not seem intoxicated or smell of alcohol. At some point, Villegas stopped and ejaculated into a trash can. He forced Jane Doe Three to watch, telling her " 'this is what you can't let get inside of you.' " Jane Doe Three nodded because she "just wanted it to end." Physically she felt numb, and, emotionally, her "heart was broken." After Villegas left, she finished getting ready for school and went to the dining table, where Villegas served her a bowl of cereal. He told Jane Doe Three that "he was sorry and that it never should have happened." He then drove her to school.

After that day, on two separate occasions when Villegas was drunk, he entered her bedroom and asked her to follow him into the bathroom so he could "show [her] something." She refused to comply but was scared. On those nights, she locked her bedroom door and barricaded it with a table to make sure Villegas could not enter. Jane Doe Three testified that, as a result of the abuse, she felt depressed, had PTSD, and couldn't "really think because [she was] constantly scared that [she] might get hurt." She tried to take her own life "a few" times.

Jane Doe Three first disclosed the abuse to her mother, although she was not sure when. Jane Doe Three disclosed the abuse to her fiancé, J.O., on the day the police arrested Villegas for molesting Jane Does One and Two. As Jane Doe Three explained: "We wanted to know why he got arrested, so we looked up the charges. And [J.O.] asked me if I thought that my dad was capable of doing anything of that sort and I told him yes. And [J.O.] said why and I said because it happened to me."

### ii.    Testimony of J.O.

J.O., Jane Doe Three's fiancé, testified that, when Jane Doe Three disclosed the abuse to him, "[s]he had a complete emotional breakdown" and was "hysterically crying." J.O. called the police that same day, May 23, 2019.

### iii.    Villegas's Second Interrogation

On May 24, 2019, Detective Berrera interviewed Jane Doe Three regarding her sexual abuse allegations. Detectives Dodd and Barrera then questioned Villegas a second time with respect to the allegations made by Jane Doe Three. A recording of the interrogation was played for the jury. As discussed further below, Villegas eventually admitted that he had made a single mistake and that everything Jane Doe Three said was true.

## B.    *Verdicts and Sentencing*

On September 21, 2021, the jury found Villegas guilty on all counts and found true all special allegations. The prosecutor recommended a determinate sentence of two years plus an indeterminate term of 225 years to life. At the sentencing hearing on December 16, 2021, the prosecutor read a victim impact statement from the family of Jane Does One and Two. Jane Doe Three and her sister also addressed the court. After argument, the trial court largely adopted the prosecution's sentencing recommendation. Specifically, with respect to the counts relating to Jane Doe One, the court ordered three consecutive terms of 25 years to life (counts one, two, and three) and one concurrent term of 25 years to life (count four). Counts five and six involving Jane Doe Two were both sentenced to consecutive terms of 25 years to life. With respect to count seven, the court ordered the mid-term of two years to be served consecutively. Finally, concluding that counts eight through ten relating to Jane Doe Three constituted separate and distinct acts, the court imposed three additional consecutive sentences of 25 years to

8

life. The court also found multiple acts in aggravation, imposing a total term of 2 years plus 200 years to life.

The court additionally imposed fines and fees, including a fine of $4,800 pursuant to section 290.3. Based on the testimony from the victims and the impact statements, the court awarded noneconomic restitution pursuant to 1202.4, subdivision (f)(3)(F), which provides that victims may recover "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7." Specifically, the court awarded $500,000 to Jane Doe 3, $50,000 to Jane Doe 1, $25,000 to Jane Doe 2, and $50,000 to each of the two mothers, L.R. and G.V.

This appeal followed.

## II. DISCUSSION

### A. *Admissibility of Portion of Second Custodial Interrogation*

Villegas was arrested on May 22, 2019, after police spoke with Jane Does One and Two. Later that day, he agreed to speak with two detectives after being advised of and waiving his *Miranda* rights. Two days later, on May 24, the detectives interviewed Villegas a second time with respect to the new allegations made by Jane Doe Three. Villegas was readvised of his *Miranda* rights, again agreed to speak with the detectives and proceeded to speak at length. Villegas argues on appeal that all of his convictions should be reversed because the police violated *Miranda* by subsequently refusing to honor his invocation of his right to remain silent during the second interrogation. Specifically, he claims that defense counsel was prejudicially ineffective for failing to seek exclusion of the latter portion of this second interview in which, as Villegas acknowledges, he "effectively confessed" to the charges in counts eight through ten involving Jane Doe Three. Seeing no violation of *Miranda*, we find no ineffective assistance of counsel.

9

### 1. *Additional Background*

During his second custodial interrogation, Villegas began by repeatedly asserting that he did not remember anything that had happened with Jane Doe Three in the bathroom when she was 14. He then switched tacks, asking the detectives if they had spoken to Jane Doe Three or if they were lying. One of the detectives responded: "She's not lying? Did this happen?" At that point, Villegas acknowledged that it was a single mistake. The following colloquy then took place, which Villegas now claims was a repeated invocation of his right to remain silent:

"[Detective]: We only want the truth.

"[Villegas]: Well that was just one mistake, I won't say anything else. It was a mistake and—whatever she says, I won't say more things anymore.

"[Detective]: (Unintelligible) ain't say anything else, it was an error. So uh that—that—everything they said is the truth?

"[Villegas]: Well s—she—she—she has to tell what—what she feels, let her vent. Supposedly, um, to tell her truth. I will simply say that it was a mistake that—that was made once and . . .

"[Detective]: And what—what was the mistake?

"[Villegas]: Uh . . .

"[Detective]: Because you don't know what she told us.

"[Villegas]: Mm-hm. I don't know. I simply don't know. I will tell you that it was a mistake and that's it.

"[Detective]: And what was a mistake?

"[Villegas]: That's the mistake that you're telling me, to accept that it was a mistake, that it happened once. I've already accepted it and that's the only thing I'll say."

10

Thereafter, the detectives disclosed that Jane Doe Three had reported that he touched her breasts, took off her clothes, put his mouth on her vagina, and put his penis in her vagina. Villegas responded: "That that you said—say—what she said. It happened. . . . She's telling the truth. She—that's the truth."

## 2. *Legal Framework and Standard of Review*

"If a defendant invokes his [or her] *Miranda* rights, questioning must cease." (*People v. Sanchez* (2019) 7 Cal.5th 14, 49 (*Sanchez*).) "However, when, as in this case, a defendant has waived his [or her] *Miranda* rights and agreed to talk with police, any *subsequent* invocation of the right to counsel or the right to remain silent must be unequivocal and unambiguous." (*Ibid.*, citing *Berghuis v. Thompkins* (2010) 560 U.S. 370, 381 (*Berghuis*); accord, *People v. Henderson* (2020) 9 Cal.5th 1013, 1022 [ambiguous or equivocal references are not sufficient].) Such an admittedly rigid and prophylactic approach is required in this context because "after a suspect makes a valid waiver of the *Miranda* rights, the need for effective law enforcement weighs in favor of a bright-line rule that allows officers to continue questioning unless the suspect clearly invokes the right to counsel or right to silence." (*People v. Nelson* (2012) 53 Cal.4th 367, 377 (*Nelson*); accord, *People v. Ramirez* (2022) 13 Cal.5th 997, 1104 (*Ramirez*).) " 'A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that "avoid[s] difficulties of proof and . . . provide[s] guidance to officers" on how to proceed in the face of ambiguity. [Citation.] If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequences of suppression "if they guess wrong." ' "

11

(*People v. Tom* (2014) 59 Cal.4th 1210, 1225, quoting *Berghuis*, at pp. 381–382.)

The test is thus whether the invocation was "articulated sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be an invocation of such rights." (*Nelson*, *supra*, 53 Cal.4th at p. 380.) "[T]he question of ambiguity in an asserted invocation must include a consideration of the communicative aspect of the invocation— what would a *listener* understand to be the defendant's meaning." (*People v. Williams* (2010) 49 Cal.4th 405, 428 (*Williams*).) The prosecution bears the burden of proof by a preponderance of the evidence to show the statements were admissible. (*Sanchez, supra*, 7 Cal.5th at p. 48.)

On review, " 'we accept the trial court's determination of disputed facts if supported by substantial evidence, but we independently decide whether the challenged statements were obtained in violation of *Miranda*.' " (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1269.) Here, the facts are undisputed. The question is whether they establish that Villegas clearly invoked his right to silence.

As for Villegas's assertion of defense counsel's ineffectiveness, it is well settled that, to prevail on an ineffective assistance of counsel claim under either federal or state law, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Waidla* (2000) 22 Cal.4th 690, 718, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–696.) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland*, *supra*, 466 U.S. at p. 697; accord, *In re Cox* (2003) 30 Cal.4th 974, 1019–1020.)  Under a prejudice analysis, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland*, at p. 686.)  "The likelihood of a different result must be substantial, not just conceivable.  (*Harrington v. Richter* (2011) 562 U.S. 86, 112.)  Thus, "[s]urmounting *Strickland*'s high bar is never an easy task." (*Richter*, at p. 105.)

### 3.     *Villegas has Forfeited his* Miranda *Claim*

As the Attorney General correctly points out—and as Villegas implicitly concedes—defense counsel in this case failed to seek to exclude Villegas's confession on the basis that he invoked his right to remain silent after a valid *Miranda* waiver.  Rather, defense counsel sought to exclude both interrogations in their entirety based on certain mistranslations of the *Miranda* warnings from English to Spanish.  The trial court rejected this argument, and, on appeal, Villegas concedes "the initial express *Miranda* waivers obtained at the outset of his two interviews were sufficient as determined by the trial court."

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: . . . [¶] . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and *so stated as to make clear the specific ground of the objection or motion*." (Evid.

13

Code, § 353, subd. (a), italics added.) " 'Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.' " (*People v. Boyette* (2002) 29 Cal.4th 381, 424.) Thus, the failure to raise a specific objection to the admission of evidence results in forfeiture of appellate review. "*Miranda*-based claims are governed by this rule." (*People v. Mattson* (1990) 50 Cal.3d 826, 854.) Under the circumstances, we will consider Villegas's claim through the lens of ineffective assistance of counsel.

### 4.     *No Ineffective Assistance of Counsel*

Villegas contends his repeated statements that he did not want to say anything else about the incident with Jane Doe Three were unequivocal assertions of his right to remain silent under *Miranda*, and thus all questioning should have ceased. He asserts that his attorney was therefore prejudicially ineffective in failing to raise this purported *Miranda* violation in the trial court and move to exclude the latter portion of his second interrogation at trial. We disagree. Based upon the record and context of the colloquy, there was no *Miranda* violation and thus there is no substantial likelihood the result in this case would have been more favorable to Villegas had defense counsel raised the claim.

As stated above, a defendant who has waived his or her *Miranda* rights, as Villegas did here, "must make a 'clear assertion' of the right to silence or counsel before officers are required to cease questioning." (*Ramirez*, *supra*, 13 Cal.5th at p. 1104.) Our high court has held that " '[a] defendant has not invoked his or her right to silence when the defendant's statements were merely expressions of passing frustration or animosity toward the officers.' " (*Williams*, *supra*, 49 Cal.4th at p. 433; see e.g., *id.* at p. 434 [the defendant's statement " 'I don't want to talk about it' " was an

14

expression of frustration with the officer's failure to accept his "repeated insistence that he was not acquainted with the victim as proof that he had not encountered her on the night of the crime, rather than an unambiguous invocation of the right to remain silent"]; see also *Nelson, supra,* 53 Cal.4th at p. 383 [the defendant's statement that he did not care who might be caught for the murder " 'as long as you guys leave me alone' " was an expression of frustration rather than an invocation of the right to silence].)

In addition, statements akin to " '[t]hat's my story, and I'll stick with it' " have been deemed insufficiently clear to invoke a defendant's right to silence under *Miranda.* (*Ramirez,* at pp. 1104–1105; see, e.g., *id.* at p. 1104 ["Viewed in context, a reasonable officer would have understood defendant's statement[—" 'I don't have nothing else to say to you guys' "—] to mean that he had nothing to add to his claims of innocence, not that he was invoking his right to silence."]; *People v. Martinez* (2010) 47 Cal.4th 911, 944 [defendant was not invoking right to silence when he said " '[t]hat's all I can tell you,' " after being confronted with inconsistencies in his story and being asked why the victim would make a false accusation]; *In re Joe R.* (1980) 27 Cal.3d 496, 515–516 [defendant's statement " 'that's all I have got to say' " was not invocation of right to silence where the defendant made the comment immediately after the officer confronted him with adverse evidence and challenged his veracity].)

In line with this precedent, we conclude here that Villegas's statements during the second interrogation—"I won't say anything else," "I won't say more things anymore," "I will tell you that it was a mistake and that's it," and "that's the only thing I'll say" —were neither unambiguous nor unequivocal invocations of his right to remain silent. Rather, after repeatedly asserting that he did not remember anything that had happened with Jane Doe Three

in the bathroom when she was 14, Villegas admitted he had made a single mistake. He also admitted he did not know exactly what Jane Doe Three had told them, yet the detectives kept asking him for more specific information regarding what had happened. A reasonable officer in this situation would conclude that Villegas's comments reflected frustration with the continued questioning because he did not want to admit to things his daughter had disclosed and was simply sticking with his story that he made a "mistake." As this did not amount to a clear invocation of his *Miranda* rights, Villegas's claim for ineffective assistance of counsel fails.[2]

## B. *Sufficiency of Pleadings Involving One Strike Allegations*

Villegas next claims that his sentence of 25 years to life with respect to each of counts eight through ten in this case violate due process as articulated in *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*) because

---

[2] Villegas's many cases cited in support of his position are easily distinguishable. (See *People v. Davis* (2009) 46 Cal.4th 539, 588 [defendant said " 'get me a lawyer' " and he was " 'over and done' " answering any questions]; *People v. Neal* (2003) 31 Cal.4th 63, 73–74 [defendant stated he was " 'ready to go right now' " and " 'I am not saying nothing now' " and invoked his right to counsel nine times but questioning continued; detective later admitted he intentionally violated *Miranda* in an attempt to get impeachment evidence for trial]; *People v. Shamblin* (2015) 236 Cal.App.4th 1, 20 [" 'I really don't want to continue the interview without at least seeking some advice' "was valid invocation of right to counsel]; *People v. Villasenor* (2015) 242 Cal.App.4th 42, 56–65 [among other indications he wanted to end the interrogation the defendant told the detective to take him home 13 times in 14 minutes]; *People v. Carey* (1986) 183 Cal.App.3d 99 [after *Miranda* advisement, the defendant said four times " 'I ain't got nothin' to say' "]; *Jones v. Harrington* (9th Cir. 2016) 829 F.3d 1128, 1134 [" 'I don't want to talk no more, man' "]; *United States v. Poole* (9th Cir. 1986) 794 F.2d 462, 464–466 [defendant refused to sign advisement of rights card, said he knew nothing and that he had " 'nothing to talk about' "]; *Christopher v. State of Florida* (11th Cir. 1987) 824 F.2d 836, 840 [statement made twice " 'I got nothing else to say' " after awareness he was being accused of murder].)

16

they were pleaded as subject to One Strike allegations based on multiple victims and terms of 15 years to life pursuant to section 667.61, subdivision (e)(4). Instead, he was sentenced to 25 years to life on each count pursuant to subdivision (m) of section 667.61, which permits the greater sentence when a defendant is convicted of a qualifying offense set forth in subdivision (n) under circumstances specified in subdivision (e) against a minor 14 years of age or older. The Attorney General disagrees, claiming that references in the pleadings to section 667.61, subdivisions (b) and (e) and the multi-victim allegations were sufficient to put Villegas on notice of the possibility of the greater sentences. We conclude Villegas has the better argument on these facts.

### 1. *Additional Background*

As to each of counts eight through ten in this case, both the original information and the first amended information alleged a special allegation pursuant to "PC 667.61(b)/(e)." Specifically, each special allegation stated that, as to Villegas, "the following special circumstances apply: (e)(4) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." Both pleadings also included a summary chart of charges and punishments, indicating that for the special allegations as to counts one through six (under section 667.61, subdivision (j)(2)) the punishments would be 25 years to life and for the special allegations as to counts eight through ten (under section 667.61, subdivisions (b) and (e)) the punishments would be 15 years to life.

The jury subsequently found Villegas guilty on all counts. As to each of counts eight through ten, the jury additionally found true that Jane Doe Three was a minor 14 years of age or older and that Villegas was convicted of a qualifying offense against more than one victim within the meaning of

17

section 667.61, subdivision (e)(4). As to each of counts one through six, the jury additionally found true that Jane Does One and Two were under the age of 14 and that Villegas was convicted of a qualifying offense against more than one victim within the meaning of section 667.61, subdivision (e)(4).

In its sentencing brief, the People suggested for the first time that the trial court impose consecutive sentences of 25 years to life for each of counts eight through ten, arguing that the three forceable sex crimes committed against Jane Doe 3 were separate and distinct acts and that full-term consecutive sentences must be imposed for each pursuant to sections 667.6, subdivision (m). As detailed above, the trial court accepted this argument, sentencing Villegas to consecutive terms of 25 years to life for counts eight through ten.[3]

### 2. *Legal Framework*

#### i. *Due Process Notice Requirements.*

"Both the Sixth Amendment of the federal Constitution and the due process guarantees of the state and federal Constitutions require that a criminal defendant receive notice of the charges adequate to give a meaningful opportunity to defend against them." (*People v. Seaton* (2001) 26 Cal.4th 598, 640.) In addition, "[a] defendant has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes." (*People v. Houston* (2012) 54 Cal.4th 1186, 1227, citing

---

[3] Although defense counsel argued at sentencing that counts eight through ten should be sentenced concurrently as a single act, he did not raise this pleading deficiency in the trial court. We nevertheless reach the issue. (See *Mancebo*, *supra*, 27 Cal.4th at p. 749, fn.7 [distinguishing as outside the scope of the waiver rule "nonwaivable errors such as 'legal error resulting in an unauthorized sentence [that] commonly occurs where the court violates mandatory provisions governing the length of confinement' "]; accord, *People v. Jimenez* (2019) 35 Cal.App.5th 373, 395 (*Jimenez*).)

18

*Mancebo, supra*, 27 Cal.4th at p. 747.) "Under modern pleading procedures, notice of *the particular circumstances* of an alleged crime is provided by the evidence presented . . . at the preliminary examination, not by a factually detailed information." (*People v. Jennings* (1991) 53 Cal.3d 334, 358.) However, "a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for [his or her] crimes." (*Mancebo, supra*, 27 Cal.4th at pp. 747–748; accord, *People v. Anderson* (2020) 9 Cal.5th 946, 953 (*Anderson*), quoting *Mancebo*.)

      *ii.*     *The One Strike law.*

The One Strike law (section 667.61) "sets forth an alternative, harsher sentencing scheme for certain forcible sex crimes." (*Mancebo, supra*, 27 Cal.4th at p. 738.) It "provides for enhanced indeterminate terms of either 15 or 25 years to life for those who commit enumerated felony sex offenses in specified circumstances." (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1521.) "The statute is designed 'to ensure serious sex offenders receive lengthy prison sentences upon their first conviction when their crimes are committed under circumstances elevating their victim's vulnerability.' " (*People v. Waqa* (2023) 92 Cal.App.5th 565, 577 (*Waqa*).)

Accordingly, subdivision (a) of section 667.61 mandates a sentence of 25 years to life if either one of the circumstances under subdivision (d) or two or more of the circumstances under subdivision (e) are found true; and subdivision (b) mandates a lesser sentence of 15 years to life if only one of the circumstances under subdivision (e) is found true.[4] (§ 667.61, subds. (a)-(b),

---

[4] As stated above, with respect to Jane Doe Three, the jury convicted Villegas of forcible rape of a minor over 14 (§ 261, subd. (a)(2), count eight), sexual penetration by a foreign object on a minor over 14 (§ 289, subd. (a)(1)(C), count nine), and forcible oral copulation of a minor over 14 (former

19

(d)-(e).)  As is relevant here, subdivision (b) of section 667.61 applies "[e]xcept as provided in subdivision (a), (j), (*l*), or (m)."  Pursuant to subdivision (m): "A person who is convicted of an offense specified in subdivision (n) under one of the circumstances specified in subdivision (e) against a minor 14 years of age or older shall be punished by imprisonment in the state prison for 25 years to life."  (§ 667.61, subd. (m).)  And subdivision (n) lists six sexual offenses, including all three offenses of which Villegas was convicted with respect to Jane Doe Three.  (*Id.*, subd. (n)(1) [forcible rape under § 261, subd. (a)(2)], (4) [forcible sexual penetration under § 289, subd. (a)(1)] & (6) [forcible oral copulation under § 287, subd. (c)(2)].)

The One Strike law goes on to explain: " If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a), (b), (j), (*l*), or (m) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a), (b), (j), (*l*), or (m) whichever is greater, rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty or the punishment under another law can be imposed in addition to the punishment provided by this section."  (§ 667.61, subd. (f).)  The One Strike law additionally provides: "The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact."  (§ 667.61, subd. (o).)

_____

§ 288a, subd. (c)(2)(C); see now § 287, subd. (c)(2)(C), count ten).  All of these are qualifying offenses under subdivision (c) of section 667.61.  (See § 667.61, subd. (c)(1), (5), & (7).)

20

### iii. Mancebo *and Progeny.*

In *Mancebo, supra*, 27 Cal.4th 735, the defendant was sentenced to two indeterminate 25-year-to-life terms under the One Strike law for committing forcible rape against one victim under the specified circumstances of gun use and kidnapping, and forcible sodomy against the other victim under the specified circumstances of gun use and tying or binding. (*Id.* at p. 738; see § 667.61, subds. (a) & (e)(1), (3), (5).) He was also sentenced to additional ten-year terms with respect to each sexual offense for personally using a gun in its commission as specified in section 12022.5, subdivision (a). (*Mancebo*, at p. 738.) Recognizing that the gun use allegation could not be used to enhance the sentence twice (see § 667.61, subd. (f)), the trial court substituted a multiple victim circumstance for the gun use circumstance based on the facts impliedly found at trial, even though the information in the case never expressly alleged a multiple victim circumstance under section 667.61, subdivision (e)(4). (*Mancebo*, at pp. 738–739.)

The Supreme Court agreed with the appellate court that imposition of the section 12022.5, subdivision (a) gun-use enhancements under these facts violated the One Strike law's pleading and proof requirements, implicated the defendant's due process rights, and resulted in an unauthorized sentence. (*Mancebo, supra*, 27 Cal.4th at p. 743.) The Court found the plain language of section 667.61 controlling. As stated above, subsection (o) of that statute provides: "The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) *is alleged in the accusatory pleading* pursuant to this section[] and is either admitted by the defendant in open court or found to be true by the trier of fact." (Italics added.) Since the multiple victim circumstance was not alleged in the information in the case, "[s]ubstitution of that unpleaded circumstance for

21

the first time at sentencing as a basis for imposing the indeterminate terms violated the explicit pleading provisions of the One Strike law." (*Mancebo*, at p. 743.)

In reaching this conclusion, the Supreme Court rejected the argument that multiple victim circumstances had effectively been pled because the information included charges for two qualifying offenses against separate victims which were found true by the jury. (*Mancebo, supra*, 27 Cal.4th at pp. 744–745.) The Supreme Court reasoned: "[N]o factual allegation in the information or pleading in the statutory language informed defendant that if he was convicted of the underlying charged offenses, the court would consider his multiple convictions as a basis for One Strike sentencing . . . . Thus, the pleading was inadequate because it failed to put defendant on notice that the People, for the first time at sentencing, would seek to use the multiple victim circumstance to secure indeterminate One Strike terms under section 667.61, subdivision (a) *and* use the circumstance of gun use to secure additional enhancements under section 12022.5(a)." (*Mancebo*, at p. 745; *id.* at p. 747 ["in addition to the statutory requirements that enhancement provisions be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for [his or her] crimes"].)[5]

---

[5] , The *Mancebo* Court also expressly distinguished *People v. Thomas* (1987) 43 Cal.3d 818 (*Thomas*), which involved whether a general charge of manslaughter, alleged to have been committed " 'willfully, unlawfully and with/o[ut] malice aforethought' " pursuant to "section 192.1" gave fair notice of a possible conviction for involuntary manslaughter, even though subdivision (1) of former section 192 referenced only voluntary manslaughter. (*Thomas,* at pp. 821, 824–825; see *Mancebo*, at pp. 747–748.) In concluding that the defendant "should have been on notice that he could be convicted of involuntary manslaughter" (*Thomas, supra,* 43 Cal.3d at p. 824), our high court cited, among other precedent, cases holding "that a valid accusatory

Because it was clear to the Court that "the prosecution understood the One Strike law's express pleading requirements and knew how to comply with them," the Supreme Court concluded "that the People's failure to include a multiple-victim-circumstance allegation must be deemed a discretionary charging decision." (*Mancebo*, *supra*, 27 Cal.4th at p. 749.)  Moreover, under such circumstances, "the doctrines of waiver and estoppel, rather than harmless error, apply." (*Ibid.*, citing *People v. Hernandez* (1988) 46 Cal.3d 194, 208–209 ["It is unnecessary to . . . engage in a harmless-error analysis when [the] defendant's due process right to notice has been so completely violated"].)  Finally, the Supreme Court underscored the importance of the pleading requirements, noting:  "[I]n many instances a defendant's decision whether to plea bargain or go to trial will turn on the extent of [his or her] exposure to a lengthy prison term." (*Mancebo*, at p. 752.)

In *Jimenez*, *supra*, 35 Cal.App.5th 373, the Sixth District interpreted *Mancebo*'s holding under circumstances similar to those presented in this case.  The information in *Jimenez* enhanced many of the charged sexual offenses with allegations under the One Strike law that Jimenez had committed a qualifying offense against more than one victim " 'within the meaning of Penal Code section 667.61(b) and (e).' " (*Jimenez*, at pp. 378, 393–394.)  As stated above, subdivision (b) of section 667.61 generally provides for a sentence of 15 years to life if a single circumstance under subdivision (e) is proven.  The trial court nevertheless sentenced Jimenez to 25 years to life for each of those counts under section 667.61, subdivision (j)(2), an exception to

---

pleading need not specify by number the statute under which the accused is being charged" (*id.* at p. 826.).  Rather, " '[in] charging *an offense*, each count . . . shall be sufficient if it contains . . . any words sufficient to give the accused notice of the offense of which he is accused.' " (*Ibid.*, quoting § 925, italics added.)

23

the general rule set forth in subdivision (b).  Jimenez argued on appeal that the failure to plead section 667.61, subdivision (j)(2) violated his due process right to notice.  (*Jimenez*, at pp. 393–394.)  The appellate court agreed.

In doing so, the Sixth District rejected the Attorney General's argument that subdivision (o) of section 667.61—which as stated above mandates that "[t]he penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section"—was satisfied because the information cited section 667.61, subdivision (e).  The court concluded that "the language of that provision—'*only* if'—does not state that such pleading is *sufficient* for application of its enhanced penalties—only that it is *necessary*." (*Jimenez, supra*, 35 Cal.App.5th at pp. 396–397, citing *California v. Hodari D.* (1991) 499 U.S. 621, 628 [the phrase "only if" states a necessary but not a sufficient condition].)  Since the information before it "only informed Jimenez he could be sentenced to terms of 15 years to life under Penal Code section 667.61, subdivisions (b) and (e) for committing the alleged offenses against multiple victims" rather than putting him "on notice that he could be sentenced to terms of 25 years to life under section 667.61(j)(2)" for committing those offenses upon multiple victims under 14 years of age, the trial court's sentencing decision violated Jimenez's constitutional right to due process.  (*Jimenez*, at p. 397.)  Highlighting the *Mancebo* Court's concern regarding informed plea bargaining, the appellate court noted that "[u]nder the Attorney General's position, 'there would be less incentive to plea bargain.' " (*Jimenez*, at p. 397.)

Two other appellate courts have rejected the *Jimenez* approach.  In *In re Vaquera* (2019) 39 Cal.App.5th 233 (*Vaquera*), review granted November 26, 2019, S258376, the information had alleged as to each of the two

24

qualifying sexual offenses that, "pursuant to Penal Code sections 667.61(b)/(e)" Vaquera had committed the qualifying offense against more than one victim. (*Vaquera*, at p. 236.) In addition, the information's description of the qualifying offenses themselves alleged that Vaquera committed a lewd and lascivious act against each of the two John Does, "*who were both children under 14 years of age*." (*Id*. at p. 235, italics added.) The court imposed a 25-year-to-life sentence as to count two and a concurrent 15-year-to-life sentence as to count one. (*Id*. at p. 237.)[6] After the sentence was affirmed on appeal, Vaquera filed a petition for writ of habeas corpus, in 2018, arguing that his 25-year-to-life sentence violated due process. The petition was summarily denied. The California Supreme Court subsequently granted Vaquera's petition for review, issuing an order to show cause as to why Vaquera was not entitled to the relief requested. (*Vaquera*, at pp. 237–238.)

On remand, the Fourth District acknowledged that, pursuant to the One Strike law, "[i]f a designated sex offense is committed against multiple victims, the default sentence is 15 years to life. (§ 667.61, subd. (b).)" (*Vaquera, supra*, 39 Cal.App.5th at p. 235.) However, the appellate court concluded that "[t]he facts alleged in the information, as well as the 25-year-to-life exception under section 667.61, subdivision (j)—which is specifically mentioned within section 667.61, subdivision (b)—gave Vaquera fair notice that he was subject to a sentence of 25 years to life. (*Vaquera*, at p. 235.) In doing so, the court cited *Thomas, supra*, 43 Cal.3d 818 and section 925 for the proposition that "the number of an enhancement statute does not have to be

---

[6] The conduct underlying count one had occurred prior to 2010, when subdivision (j)(2) of section 667.61 was added, allowing for the enhanced sentence of 25 years to life under specified circumstances. (*Vaquera, supra*, 39 Cal.App.5th at p. 237.)

25

alleged, so long as the accusatory pleading apprises the defendant of the potential for the enhanced penalty and alleges every fact and circumstance necessary to establish its applicability." (*Vaquera*, at p. 239.) Although "the 25-year-to-life exception for victims under 14 years of age was not referenced in the information charging Vaquera, it was not required to be" because it "was effectively noted in the information by reference to section 667.61, subdivision (b), which specifically references, in its introductory clause, section 667.61, subdivision (j), as an exception to its provisions." (*Vaquera*, at pp. 241–242.)

The *Vaquera* court distinguished *Mancebo* since Vaquera's information properly alleged the two multiple victim aggravating circumstances under their numerical subdivision, section 667.61, subdivision (e). (*Vaquera*, *supra*, 39 Cal.App.5th at p. 243.) It also distinguished *People v. Wilford* (2017) 12 Cal.App.5th 827 (*Wilford*) in which the defendant was charged with and convicted of two counts of corporal injury to a cohabitant, which ordinarily carries a sentence of two, three, or four years. However, section 273.5 also provides that if the defendant had a prior conviction for the same offense within the previous seven years, the sentencing triad becomes two, four, or five years under subdivision (f)(1). (See *Wilford*, at pp. 835–836 & fn. 7.) The information made no mention of subdivision (f)(1). (*Wilford*, at p. 838.) Under the circumstances, the appellate court concluded that Wilford could not be sentenced under the triad provided in section 273.5, subdivision (f)(1) because "[t]here was *no indication whatsoever* that Wilford faced the possibility of a sentence of two, four, or five years for each of those same offenses under section 273.5, subdivision (f)(1)." (*Wilford*, at p. 840, italics added.) The *Vaquera* court concluded that, because subdivision (b) states it applied "[e]xcept as provided" in subdivision (j), Vaquera was on notice that

26

subdivision (j)(2) might increase his sentence to 25 years to life. Thus, W*ilford* was inapposite. (*Vaquera*, at pp. 243–244.) Finally, the Fourth District simply disagreed with the analysis in *Jimenez*, noting that the *Jimenez* court: never considered the fact that the 25-year-to-life exception under section 667.61, subdivision (j)(2) is specifically provided for within section 667.61, subdivision (b); failed to distinguish *Mancebo* as a case in which no multiple victim sentencing allegations had been pleaded; and failed to recognize that, if the prosecution properly pleads and proves multiple victim allegations for qualifying sex offenses in which the victims were under 14 years of age, the trial court was *required* to impose a 25-year-to-life sentence under section 667.61, subd. (j)(2). (*Vaquera*, at pp. 244–245.)

In *People v. Zaldana* (2019) 43 Cal.App.5th 527 (*Zaldana*), review granted March 18, 2020, S259731, the relevant information alleged that five counts of qualifying sexual offenses were committed against more than one victim "within the meaning of Penal Code section 667.61(b) and (e)." (*Zaldana*, at p. 530.) Agreeing with *Vaquera*'s "detailed analysis" and rejecting *Jimenez's* "cursory reasoning," the Second District determined that Zaldana had constitutionally adequate notice that he could be subject to the longer sentence in section 667.61, subdivision (j)(2), even though the People did not specifically plead that statute. (*Zaldana*, at p. 533.) Moreover, the *Zaldana* court also endorsed *Vaquera*'s conclusion that "because the prosecution properly pleaded and proved multiple victim allegations for qualifying sex offenses in which the victims were under 14 years of age, the trial court was *required* to impose a 25-year-to-life sentence under section 667.61." (*Zaldana*, at p. 536.) Since the trial court had imposed unauthorized sentences of 15 years to life, the appellate court remanded the matter so that the trial court could determine whether to run any of the

27

mandatory sentences of 25 years to life concurrently rather than consecutively. (*Ibid*.) In doing so, the court rejected the argument that the prosecution was exercising its sentencing discretion in selecting to charge the shorter term under subdivision (b) of section 667.61 rather than the longer term under subdivision (j)(2). (*Zaldana*, at pp. 535–536.)

### 3. *Due Process Was Violated in this Case*

As to each of counts eight through ten in this case, the operative information alleged that Jane Doe Three was a minor victim over the age of 14. In addition, counts eight through ten were enhanced with allegations pursuant to section 667.61, subdivisions (b) and (e) that "the following circumstances apply: (e)(4) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." But when describing the penalties, the information specifically alleged a penalty of 15 years to life as to the enhancements for counts eight, nine and ten. Thus, to determine here whether Villegas was properly sentenced to terms of 25 years to life for counts eight through ten, we must decide whether to follow *Jimenez*'s interpretation of *Mancebo* or adopt the reasoning set forth in *Vaquera* and *Zaldana*. We find *Jimenez* more persuasive.

It is true that the proceedings in *Mancebo* are factually distinguishable from the situation here (as well as in *Vaquera* and *Zaldana*) because the information in *Mancebo* did not plead a multiple victim circumstance under section 667.61, subdivision (e) and thus the trial court violated the express pleading and proof requirements of the statute when it used the fact that there were multiple victims in the case to enhance a qualifying offense. However, *Vaquera* and *Zaldana* ignore the fact that the *Mancebo* Court found a violation of *due process* as well as a statutory violation, using much broader

28

language.  Under the circumstances, we agree with *Jimenez* that the pleading requirements in subdivision (o) of section 667.61, while necessary, may not be sufficient for due process purposes.  Rather, "a defendant has a cognizable due process right to *fair notice of the specific sentence enhancement allegations that will be invoked* to increase punishment for [his or her] crimes." (*Mancebo*, *supra*, 27 Cal.4th at pp. 747–748, italics added.)

We do not see this interpretation as inconsistent with the language in *Mancebo* indicating that reference to specific numerical subdivisions of section 667.61, subdivision (e) may not be required.  As the *Mancebo* Court opined:  "[W]e do not here hold that the specific numerical subdivision of a qualifying One Strike circumstance under section 667.61, subdivision (e), necessarily must be pled.  We simply find that the express pleading requirements of section 667.61, subdivisions (f) and [(o)], read together, require that an information afford a One Strike defendant fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing.  Adequate notice can be conveyed by a reference to the description of the qualifying circumstance (e.g., kidnapping, tying or binding, gun use) in conjunction with a reference to section 667.61 or, more specifically, 667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e), or some combination thereof.  We do not purport to choose among them." (*Mancebo, supra*, 27 Cal.4th at pp. 753–754.)  In short, while specific references to numerical subdivisions may not be required, an information must always "afford a One Strike defendant *fair notice of the qualifying*

29

*statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing.*" (*Ibid.*)[7]

Thus, the *Mancebo* Court concluded that the defendant's due process rights in that case had been violated "not because [he] was never afforded notice that he was being charged with crimes against two victims; he obviously was, and not because defendant was never afforded notice that the One Strike law would apply to his case; again, he was. Sentencing error occurred because defendant was given notice that gun use would be used as one of the two pleaded and minimally required circumstances in support of the One Strike terms, whereafter, at sentencing, the trial court used the *unpled* circumstance of multiple victims to support the One Strike terms, and further imposed two 10-year section 12022.5(a) enhancements that could otherwise not have been imposed but for the purported substitution." (*Mancebo, supra*, 27 Cal.4th at p. 753.) So too, in this case, Villegas's due process rights were violated because—although he was on notice he was being charged with crimes against a minor victim 14 years of age or older and that the One Strike law would apply to his case—he was not given notice that Jane Doe Three's age would be used under subdivision (m) of section 667.61 to increase his exposure on counts eight through ten from 15 years to life to 25 years to life. To the contrary, it was expressly pled in the information that the punishments for these counts would be 15 years to life.[8]

---

[7] Given this formulation of the specific due process requirements applicable in the context of the One Strike law, we find perplexing the reliance placed by *Vaquera* and *Zaldana* on *Thomas, supra*, 43 Cal.3d 818, a case which the *Mancebo* court expressly found irrelevant to its analysis of that statute. (*Mancebo, supra*, 27 Cal.4th at pp. 747–748.)

[8] We recognize that this case is distinguishable from *Vaquera* and *Zaldana* because, here, the prosecutor expressly pled in the information that the punishments for the relevant sexual offenses would be 15 years to life under section 667.61, subdivision (b) and (e). (See *People v. Nash* (2023) 87

Given our analysis, we obviously reject the argument proffered in *Vaquera* and *Zaldana* that the cross-reference to the exceptions in subdivision (b) of section 667.6—in those cases subdivision (j) and in this case subdivision (m)—place a defendant on fair notice of his or her potential exposure of 25 years to life. An accusatory pleading "must adequately inform the defendant as to how the prosecution will seek to exercise its discretion." (*Anderson*, *supra*, 9 Cal.5th at p. 957.) An information that cites generally to subdivision (b) of section 667.61 and recites a lower penalty simply does not give a defendant adequate notice of a possible enhanced punishment under an exception to that subdivision based on facts contained elsewhere in the information.

We thus also necessarily reject the conclusion in *Zaldana* that a prosecutor has no discretion in this context when choosing how to plead One Strike allegations. (See *Mancebo, supra*, 27 Cal.4th at p. 747 ["the People's failure to include a multiple-victim-circumstance allegation must be deemed a discretionary charging decision"].) As the *Anderson* Court explained: An accusatory pleading "must adequately inform the defendant as to how the prosecution will seek to exercise its discretion." (*Anderson*, *supra*, 9 Cal.5th at p. 957.) While the prosecution in this case could have elected to pursue a prison term of 25 years to life for each of counts eight through ten under the circumstances specified in section 667.61, subdivision (m), rather than a term of 15 years pursuant to subdivision (b) of that statute, it was not required to

Cal.App.5th 483, 494 (*Nash*) ["where an accusatory pleading *expressly specifies* potential exposure of 15 years to life . . . , principles of due process do not permit the prosecution to mislead a defendant [and sentence him/her] to 25 years to life under section 667.61, subd. (j)(2)"], review granted Mar. 22, 2023, S278610.) However, even without this fact, we would still find that Villegas's due process rights were violated based on our reading of *Mancebo*.

do so. As such, it must be deemed to have made a discretionary charging decision.

In sum, the prosecution in this case clearly chose to exercise its charging discretion by pleading a general enhancement under subdivisions (b) and (e) of section 667.61. Thus, it could not subsequently request a greater sentence under subdivision (m) of that statute without running afoul of Villegas's due process right to fair notice. Having pled and proven sentences of 15 years to life with respect to counts eight through ten, those were the only sentences available to the sentencing court under section 667.61. (Compare *Waqa, supra,* 92 Cal.App.5th at pp. 584–588 [a One Strike sentence may be reduced on appeal pursuant to section 1260 where the greater allegation cannot be retried].) We will therefore reduce the sentences with respect to counts eight through ten to 15 years to life in this case.

## C.    *Non-Economic Restitution*

Villegas next argues that certain noneconomic damages awarded in this case must be stricken as unauthorized. First, he asserts that the $500,000 granted to Jane Doe Three was improper because the authorizing statute—section 1202.4, subdivision (f)(3)(F)—only covers noneconomic losses for violations of sections 288, 288.5, and 288.7 and none of the three counts involving Jane Doe Three in this case were based on those statutes. Next, he maintains that the award of noneconomic damages to the two mothers of the three Does was also unauthorized under section 1202.4 because the statute only contemplates recovery of noneconomic losses for the actual victims of the enumerated sexual offenses. We address each contention in turn.

### 1.    *Noneconomic Damages for Jane Doe Three*

As mentioned above, the trial court awarded $500,000 in noneconomic damages to Jane Doe Three at sentencing. Villegas argues that this award

was unauthorized because the restitution statute provides for awards based on "[n]oneconomic losses, including, but not limited to, psychological harm, for *felony violations of Section 288, 288.5, or 288.7.*" (§ 1202.4, subd. (f)(3)(F), italics added.)  With respect to Jane Doe Three, Villegas was convicted of forcible rape of a minor over 14 (§ 261, subd. (a)(2)), sexual penetration by a foreign object on a minor over 14 (§ 289, subd. (a)(1)(C)), and forcible oral copulation of a minor over 14 (§ 287, subd. (c)(2)(C)).  Since none of these sexual offenses are expressly set forth in the restitution statute, Villegas asserts that the award for noneconomic damages was improper.  The law, however, is not so clear.

i.      *Statutory Interpretation of Subdivision (f)(3)(F)*

Several appellate courts have interpreted subdivision (f)(3)(F) of section 1202.4 as embracing felony convictions for *conduct* violating section 288, even if the convictions themselves were under different statutes.  (*People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1103–1106 (*McCarthy*); accord, *People v. Martinez* (2017) 8 Cal.App.5th 298, 302–306 (*Martinez*).)  For instance, in *McCarthy*, the defendant was convicted of continuous sexual abuse of a child (§ 288.5, subd. (a)); aggravated sexual assault of a child (§ 269, subd. (a)(4) & (5)); forcible oral copulation (former § 288a, subd. (c)(2)(A)); and forcible rape (§ 261, subd. (a)(2)).  (*McCarthy*, at p. 1100.)  At a later restitution hearing, the trial court—pursuant to subdivision (f)(3)(F) of section 1202.4—awarded the victim $100,000 per year for 10 years, for a total award of $1 million in noneconomic damages.  (*Id.* at p. 1101.)

McCarthy argued on appeal that the restitution award was improper because he was not convicted under section 288 as the plain language of section 1202.4, subdivision (f)(3)(F) then required.  (*McCarthy, supra,* 244 Cal.App.4th at p. 1103.)  Division Five of this District rejected his argument,

33

concluding preliminarily that the language of the statute was ambiguous because it only required a *violation* of section 288 rather than a conviction. (*Id.* at pp. 1105–1106; see *People v. Zeigler* (2012) 211 Cal.App.4th 638, 666 [construing "violations of law" to encompass more conduct than " 'arrests and convictions' "].)  Turning next to the legislative history, the appellate court noted that the Legislature had removed the word " 'conviction' " from the subdivision in 1996, replacing it with the term " 'violations.' "  The court concluded that "the Legislature presumably intended to remove any requirement that defendants actually be convicted of a charge under section 288 before restitution for noneconomic losses could be awarded."  (*McCarthy,* at pp. 1106–1107.)  In further support of this interpretation, the court opined that the "overall history of the amendments to section 1202.4 reflects a legislative intent to enlarge, not restrict, the availability of restitution. (*McCarthy*, at p. 1107.)  Moreover, " ' "[i]n keeping with the [voters'] 'unequivocal intention' that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed.' ' "  (*Id.* at p. 1105, referencing Cal. Const., art. I, § 28, subd. (b).)

In addition, the *McCarthy* court opined that any other construction of section 1202.4, subd. (f)(3)(F) would lead to an absurd result.  (*McCarthy*, *supra*, 244 Cal.App.4th at pp. 1108–1109.)  The court could see no rational basis for the Legislature to "have chosen to permit restitution for the psychological harm caused by lewd and lascivious acts but not for the psychological harm caused by the very same conduct when charged as continuous child sexual abuse."  (*Id.* at p. 1108.)  It thus refused to adopt a statutory construction "that would grant restitution for noneconomic loss to

victims of lewd and lascivious acts but not to victims of . . . 'much more serious' violations of the Penal Code." (*Ibid.*)[9]

The *McCarthy* court finally turned to the question of whether, under the rule it had articulated, the minor victim was entitled to noneconomic restitution. It noted that "[s]ection 288 requires the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the defendant or of the child, whereas a conviction for violating section 288.5 could be based upon a course of substantial sexual conduct within the meaning of section 1203.066, subdivision (b), which requires no specific intent." (*McCarthy*, *supra*, 244 Cal.App.4th at p. 1110.) However, in the case before it, the charging document, the prosecutor's closing argument, and the instructions all explained that the section 288.5 charge was based on the commission of lewd and lascivious acts. Moreover, the trial evidence showed the element of sexual arousal or gratification was present. (*Ibid.*) Under such circumstances, the *McCarthy* court determined that it was "inconceivable that the jury could have found McCarthy guilty of violating section 288.5 without also finding he possessed the specific 'intent of

---

[9] In reaching this conclusion, the court distinguished *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1181, which had concluded that "[t]he plain language of section 1202.4, subdivision (f)(3)(F) limits noneconomic restitution awards to 'felony violations of Section 288.' It does not include section 288.5." In *Valenti,* however, the People had *conceded* that the trial court erred in awarding noneconomic restitution for a violation of section 288.5. (*McCarthy*, at p. 1111.) Nevertheless, given the apparent conflict between *Valenti* on the one hand and *McCarthy* and *Martinez* on the other, the Legislature subsequently clarified the statutory language by amending subdivision (f)(3)(F) of section 1202.4 to permit noneconomic restitution "for felony violations of Section 288, 288.5, or 288.7." (See *People v. Lee* (2018) 24 Cal.App.5th 50, 59-60.) Interestingly, although it had the opportunity to do so, the Legislature did not amend the statute to abrogate the statutory analysis in *McCarthy*.

arousing, appealing to, or gratifying the lust, passions, or sexual desires of"
himself or the victim.  (§ 288, subd. (a).)"  (*McCarthy*, at p. 1110.)

   ii.      *Jane Doe Three is Entitled to Noneconomic Restitution*

   As stated above, the crimes of which Villegas was convicted involving
Jane Doe Three did not include a violation of section 288, which provides that
"a person who willfully and lewdly commits any lewd or lascivious act,
including any of the acts constituting other crimes provided for in Part 1,
upon or with the body, or any part or member thereof, of a child who is under
the age of 14 years, with the intent of arousing, appealing to, or gratifying the
lust, passions, or sexual desires of that person or the child, is guilty of a
felony."  (§ 288, subd. (a).)  However, section 288 also states:  "A person who
commits an act described in subdivision (a) with the intent described in that
subdivision, and the victim is a child of 14 or 15 years, and that person is at
least 10 years older than the child" can be charged as a felony.  (§ 288, subd.
(c)(1).)  We must therefore consider whether Villegas's conduct with respect to
Jane Doe Three in this case violated subdivision (c)(1) of 288 even though he
was convicted under other statutes.  We conclude that it does.

   For instance, as described above, Villegas was convicted in count nine
of felony sexual penetration by force of a minor 14 years of age or older
(§ 289) based on his conduct with Jane Doe Three when she was 14.  The
crime of sexual penetration by object is a specific-intent crime because it
requires the penetration "to be done with the intent to gain sexual arousal or
gratification or to inflict abuse on the victim."  (*People v. McCoy* (2013) 215
Cal.App.4th 1510, 1541; accord, *People v. Ngo* (2014) 225 Cal.App.4th 126,
157 [sexual penetration with a child is a specific intent crime].)  And here, the
jury was instructed that "*[s]exual penetration* means penetration, however,
slight, of the genital or anal opening of the other person for the purpose of

sexual abuse, arousal, or gratification."  Moreover, there was no evidence of abuse in this case and significant evidence that Villegas's actions were motivated by a desire for sexual arousal and gratification.  Under these circumstances, it is inconceivable that the jury could have found Villegas guilty of violating section 289 without also finding he possessed the specific "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of" himself or the victim as required for a conviction of section 288, subd. (c)(1).  (§ 288, subd. (a).)  In sum, Villegas was convicted of felony *conduct* that violated section 288.  The restitution award to Jane Doe Three for her noneconomic losses was therefore proper.

### 2. *Awards to the Mothers of the Does*

Villegas next challenges the award of $25,000 to each of L.R. and G.V. (the mothers of the three Does) as beyond the scope of section 1202.4., claiming that the statute only allows restitution for noneconomic losses for the actual victims of the enumerated offenses, not their relatives or other individuals.  Arguing the dissent by Justice Banke, Villegas asks us to reconsider our conclusion in *People v. Montiel* (2019) 35 Cal.App.5th 312 (*Montiel*).  We decline to do so.  While we appreciate the points raised by our learned colleague in the dissent regarding the question of whether the Legislature intended to expand recovery of noneconomic damages to derivative victims who may not be able to show direct economic damages, we believe those questions are best directed to the Legislature.  In addition to the principles of statutory construction previously discussed in *Montiel,* utilizing the proof of economic damages as a prerequisite for a parent to recover noneconomic damages does not make intrinsic sense, especially in the context of an economically disadvantaged individual as in this case.  Our role is to construe the statute as written.  (*Montiel*, *supra*, 35 Cal.App.5th at

37

p. 319 [courts will not interpret away clear language in favor of an ambiguity that does not exist]; see also *A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1386 [generally we presume the Legislature meant what it said].) As written, the statutory scheme allows the award of noneconomic damages to derivative victims of childhood sexual abuse with the understanding that the trial court will act as the gatekeeper.[10] Moreover, as we stated in *Montiel*, even if we were to resort to extrinsic aids, nothing in the legislative history evinces any legislative intent to preclude parents of children who are sexually abused from being awarded restitution for their noneconomic losses, which the statute's plain language treats as a subset of economic damages for restitution purposes. (*Montiel*, p. 323.)

We thus follow *Montiel* and see no error in the award of noneconomic damages to the two mothers in this case.

### D. Fines and Fees

Finally, both Villegas and the Attorney General raise issues regarding the fines and fees imposed in this case, each conceding that the other is correct. We agree with both parties. We will therefore reduce the sex offender fine imposed pursuant to section 290.3, subdivision (a) from $4,800 to $4,300 and impose $12,320 in additional penalty assessments as detailed below.[11]

---

[10] In this case, the issue is largely academic. Villegas will serve a sentence of 180 years to life, owes extensive restitution to the direct victims, and, as the record below discloses, did not have economic resources prior to his incarceration.

[11] Both Villegas and the Attorney General are authorized to raise these issues for the first time on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 356–357 [unauthorized sentences exempted from the waiver rule and may be raised for first time on appeal]; *People v. Hamed* (2013) 221 Cal.App.4th 928, 941 [same]; *People v. Stewart* (2004) 117 Cal.App.4th 907, 910–911 (*Stewart*) ["Once the section 290.3, subdivision (a) sex offender fine is imposed, the trial

38

Section 290.3, subdivision (a) provides: "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." Here, Villegas was convicted of 10 crimes, nine of which were sexual offenses set forth in section 290, subdivision (c) as requiring registration as a sex offender. (See § 290, subd. (c) [listing, among others, §§ 261, 288, 289, and former 288a].) However, dissuading a witness from reporting a crime (§ 136.1) is not an offense set forth in the registration statute. Thus, Villegas should have been fined $300 plus $4,000 (8 x $500) under section 290.3, subdivision (a), for a total of $4,300, not $4,800.

Moreover, once a sex offender fine is imposed pursuant to subdivision (a) of section 290.3, a trial court must also impose penalty assessments pursuant to section 1464 and Government Code section 76000, subdivision (a). (See *Stewart*, *supra*, 117 Cal.App.4th at p. 911.) Section 1464, subdivision (a)(1) provides that "there shall be levied a state penalty in the amount of ten dollars ($10) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses . . . ." Thus, an additional penalty assessment of $4,300 must be assessed based on the amount of the sex offender fine. Similarly, pursuant to subdivision (a) of Government Code section 76000, subdivision (a)(1): "[T]here shall be levied an additional penalty in the

court is duty bound to require the accused to pay the additional section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments."].)

amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses." In this case, that assessment amounts to $3,010.

Additional mandatory penalty assessments based on imposition of the sex offender fine that were not assessed by the trial court include: (1) $860 (§ 1465.7, subd. (a) ["[a] state surcharge of 20 percent shall be levied on the base fine used to calculate the state penalty assessment as specified in subdivision (a) of Section 1464"]; (2) $2150 (Gov. Code., § 70372, subd. (a)(1) ["there shall be levied a state court construction penalty, in the amount of five dollars ($5) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses"]; (3) $430 (Gov. Code, § 76104.6, subd. (a)(1) [a DNA penalty "of one dollar ($1) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses" shall be assessed]); (4) $450 (former Gov. Code, § 76104.7, subd. (a); Stats. 2011, ch. 36, § 16 [a statewide-only DNA penalty of $3 for every ten dollars ($10), or part of ten dollars ($10) for fines related to offenses committed before June 27, 2012 (Jane Doe Three); and (5) $1,120 (Gov. Code § 76104.7, subd. (a) [a statewide-only DNA penalty of $4 for every ten dollars ($10), or part of ten dollars ($10) for fines related to offenses committed after June 27, 2012 (Jane Does One and Two). (See *Hamed*, *supra*, 221 Cal.App.4th at pp. 940–941 & fn. 8.)

Thus, on remand, the trial court should impose $12,320 in additional penalty assessments as set forth herein.

## III. DISPOSITION

Villegas's sentences with respect to counts eight, nine, and ten are each reduced from 25 years to life to 15 years to life. The sex offender fine that was imposed pursuant to section 290.3 is reduced from $4,800 to $4,300. In addition, the following penalty assessments are imposed: $4,300 (§ 1464, subd. (a)(1)); $3010 (Gov. Code, § 73000, subd. (a)(1); $860 (§ 1465.7, subd. (a)); $2150 (Gov. Code., § 70372, subd. (a)(1)); $430 (Gov. Code, § 76104.6, subd. (a)(1)); $450 (former Gov. Code, § 76104.7, subd. (a)); and $1120 (Gov. Code, § 76104.7, subd. (a)). The trial court is instructed to prepare an amended abstract of judgment memorializing these changes, and to send a copy of the amended abstract to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

GETTY, J.*

I CONCUR:


MARGULIES, ACTING P.J.


A164370P

---

\* Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

42

CONCURRING AND DISSENTING OPINION OF BANKE, J.

I concur in the majority opinion in all respects but one, the award of restitution for noneconomic losses to the mothers of the Does. For the reasons stated in my dissent in *People v. Montiel* (2019) 35 Cal.App.5th 312, 327–361 (dis. opn. of Banke, J.), I remain of the view that in amending Penal Code section 1202.4, the Legislature intended that the *child* victims of specified child sex crimes recover restitution for their noneconomic losses, but that it did not otherwise depart from the long-established rule, applicable in all other contexts, that statutory restitution is limited to economic losses.

I concur and dissent:

_____

Banke, J.

Superior Court of Napa County

Honorable Scott R.L. Young

Counsel:

Eric R. Larson under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Amit Kurlekar, Deputy Attorney General, Victoria Ratnikova, Deputy Attorney General for Plaintiff and Respondent.